STANTON, APPELLEE, *v.* SAYRE ET AL., APPELLEES; LEVEQUE, APPELLANT.

(No. 82AP-134—Decided June 7, 1983.)

*Mr. Frederic M. Stanton II, pro se.*

*Messrs. Porter, Wright, Morris & Arthur, Ms. Kathleen K. Haase* and *Mr. Robert H. Hoffman,* for appellee Huntington National Bank.

*Messrs. Bricker & Eckler* and *Mr.*

*Richard C. Pickett,* for appellee John W. Galbreath & Co. and O.S.C., Inc.

*Messrs. Chester, Hoffman & Willcox, Mr. John J. Chester, Mr. F. Herbert Hoffman, Jr.,* and *Mr. Donald C. Brey,* for appellant, Katherine S. LeVeque.

STRAUSBAUGH, J. This is an appeal from a judgment by the trial court authorizing the trustee, Huntington National Bank, to withdraw property it holds from the active market. The trial court found it to be for the best interests of the trust to disapprove and reject all offers and bids for the premises. The defendant-appellant, Katherine S. LeVeque, brought a timely notice of appeal and raised the following assignments of error:

"I. The trial court erred in its interpretation of Ohio Revised Code Sections 5303.21, 5303.25, and 5303.31 in that it considered bids subsequent to the one made by trustee Huntington Bank and accepted by Katherine S. LeVeque.

"II. The trial court erred in its interpretation of Ohio Revised Code Sections 5303.21, 5303.25, and 5303.31 in that it refused to confirm the agreement between trustee Huntington Bank and Katherine S. LeVeque.

"III. The trial court erred in its application of the term 'best interests of the trust' to the facts presented."

The tract of property, which is the subject of this action, is located at the northwest corner of Broad and High Streets, the center of downtown Columbus, and the site of the former Deshler Hotel. In 1898, William E. Deshler placed the Deshler tract at Broad and High Streets in trust for the erection and continued family ownership of the Deshler Hotel. By 1967, the hotel had deteriorated badly and was operating at a loss. On October 13, 1967, one of the beneficiaries of the trust commenced this action pursuant to the Ohio disentailment statutes, R.C. 5303.21 *et seq.,* asking for court authorization to sell the land. The court found that continued operation of the Deshler Hotel

would be harmful to the trust beneficiaries and authorized the sale.

In 1968, the Deshler tract was sold to Dynamic Security Properties, Inc., which defaulted on its $1.8 million note, resulting in the property being returned to the trust by way of a foreclosure sale. Thereafter, the trial court appointed defendant-appellee Huntington National Bank of Columbus the successor trustee of the Deshler Trust. Since that time, various attempts have been made to sell the subject property, none of which has resulted in a sale.

On March 18, 1981, Katherine LeVeque submitted an offer to the Huntington National Bank offering to purchase the Deshler property. The bank submitted a counter offer to Mrs. LeVeque on March 20, 1981 by means of a letter from Carl Rechner to Mrs. LeVeque which reads, in part, as follows:

"Dear Mrs. LeVeque:

"I am writing to you in response to your proposal to acquire the subject Trust property. After reviewing your proposal, the Trust Real Estate Review Committee is willing to present the following proposal to you:

"1) We will give you an option for six months for the purchase price of $1,800,000 in cash on delivery of deed for the price of $15,000. To extend this option for an additional six months payment will be $50,000. There will be no additional option periods. Purchase price would remain the same throughout the option and no payments made for the option would be applied to the purchase price. It is understood that the subject lease agreement for parking purposes would be intact during the term of this option.

"2) Or we will sell you the subject property at $1,700,000 cash on delivery of deed, to be closed within 30 days upon execution of a purchase contract. A deposit of $20,000 will be necessary.

"All agreements are subject to court approval. It is understood that either proposal will be open for acceptance until 5:00 p.m., Wednesday, March 25, 1981."

On March 24, 1981, proposal No. 1 was accepted by Mrs. LeVeque along with acknowledgement of the fact that the agreement must be approved by the court. On the morning of April 3, 1981, the Huntington National Bank revealed the terms of its agreement with Mrs. LeVeque at a tax reduction hearing before the Board of Revision for Franklin County. On April 6, 1981, three days after the hearing before the board of revision, the bank, as trustee, received two other offers relating to the subject property. Two additional offers were made on April 27, 1981 at a hearing in common pleas court.

Inasmuch as the first and third assignments of error are interrelated, they will be treated together in this opinion. R.C. 5303.21 provides, in part:

"In an action * * * by the trustee or beneficiaries, if the estate is held in trust, courts of common pleas may authorize the sale of any estate * * * when satisfied that such sale would be for the benefit of the person holding the * * * present estate * * * and do no substantial injury to the heirs in tail * * * or remainder. * * *"

As stated, the common pleas court has previously, pursuant to R.C. 5303.21, authorized the sale of the subject property and it was pursuant to said section that the trustee and Mrs. LeVeque entered into the agreement for sale of the property. The first question for consideration is whether the parties, Mrs. LeVeque and the trustee, entered into a contractual agreement. Mrs. LeVeque takes the position that she entered into a contract with the trustee. The trustee argues that Mrs. LeVeque merely submitted an offer which was not binding absent the court's acceptance of the offer.

R.C. 5303.25 provides:

"A sale of an estate described in section 5303.21 of the Revised Code shall be

reported to the court of common pleas authorizing such sale. On examination thereof, if it appears that the sale was fairly conducted and made, and that the price obtained is the reasonable value of the estate sold, the court shall confirm the sale and direct a deed of conveyance of the premises sold to be made to the purchaser on payment of the purchase money, or on securing its payment as the court approves."

The trial court is neither a party to the contract nor does the trial court accept the contract. The trustee enters into the contract of sale with the purchaser. The trial court must determine whether the contract was fairly conducted and made and whether the price obtained is reasonable. If the trial court determines that the contract was fairly conducted and made and that the price obtained was reasonable, it is mandatory upon the trial court to confirm the sale and direct a deed of conveyance to the purchaser upon payment of the purchase price. The trustee has the power to enter into a contract. The trial court's review is limited to the provisions contained in R.C. 5303.25.

In this case, Mrs. LeVeque made an offer to the trustee. The trustee then made a counteroffer to Mrs. LeVeque which she unconditionally accepted. At that time a contract of sale came into being subject to approval of the court as provided in R.C. 5303.25. The provision providing for confirmation by the court was written into the contract as a condition precedent to the contract of sale becoming operative.

In examining the proceedings conducted by the trial court as noted above, after the contract was made, the terms were made public before the board of revision. More offers followed and a hearing was then held before the trial court. The parties disagree about what took place. Mrs. LeVeque states that the sale became a public auction. The trustee claims that the judge merely attempted to determine whether Mrs. LeVeque's offer repre-

sented the reasonable value of the property.

The first hearing was held on April 27, 1981 at which time the court opened the hearing with the following statements:

"THE COURT: This hearing is before the court this morning on a submission of bids for the purchase of a piece of land located at the corner of Broad and High Streets in Columbus, Ohio, commonly referred to for this court's purposes as the Deshler Trust.

"There are, as I understand it, five bids being submitted. I would call first upon Mr. Robert Hoffman to explain to the court the details of the bidding procedure and a little bit of the history of the property itself. Mr. Hoffman."

At one point, while disclaiming a suggestion by Mrs. LeVeque that the proceeding was an auction, the trial judge reiterated that he was going to open bids so that the court could determine what was the first and best bid. Later on, the trial court assented to an offeror's claim that the purpose of the proceedings was for the trial court to determine what was the best offer for the property in conjunction with what was best for the benefit of the beneficiaries of the trust.

During the hearing, the trial court received five offers. The LeVeque offer as already noted was for $1,800,000. One offer was received for $1,000,000 and another for $1,555,000. A fourth offer was made at the hearing for $1,800,000 if the option was exercised within six months of the common pleas court order; if within fifteen months, the sum offered was $1,900,000; if accepted within twenty-four months, the sum offered was $2,000,000. A fifth offer to acquire an option was submitted. After all offers were received, the hearing came to a close.

Another hearing was held on September 17, 1981 at which time the court stated that the hearing was being held to consider the "* * * possibility of an appointment of a disinterested appraiser to

establish a true value of the property. * * *'' At the second hearing, no evidence was presented and the hearing involved the receipt of views from the parties regarding the appointment of an appraiser. The trustee did not oppose the appointment of an appraiser. The representative of some of the beneficiaries expressed no view on the appointment of an appraiser but urged that the property not be sold at this time.

The appointment of an appraiser was opposed by Mrs. LeVeque who restated the history of the property including the contract she had entered into with the trustee. She criticized reliance on appraisers in determining the value of property pointing out that value is basically arrived at by finding out what someone is willing to pay. Mrs. LeVeque claimed that smaller properties may actually sell for a greater square foot price because someone is willing to pay more for smaller parcels. The income approach was disparaged by Mrs. LeVeque because the present use of the property as a parking lot does not produce an income that can be used to accurately value the property. The residual method was also said to be wanting because the actual value of land in proportion to the cost of the building is less than it would have been in 1979. Mrs. LeVeque's principal argument was that an appraisal was not conclusive to show value and that it would be a waste of the court's time.

The court heard a few more statements and then stated:

"THE COURT: For the record, at this time the court is going to make certain observations.

"Number one, the offer of the LeVeque interest was recommended originally to the court by the trustee, at which time, apparently some other people had wind of the fact that this was coming before the court and made similar and substantial offers.

"It was not until this morning that the court has reviewed or even had access to the opinion of Mr. Murr, that being a price of $1,700,000.

"The court did have before it the opinion of at least two other qualified appraisers, that being Two Million and Five, which is the present tax evaluation. In fact, Two Million, Five Hundred Thirty Thousand, Four Hundred Ten Dollars.

"A third opinion, was the previous tax appraisal of Two Million, Nine Hundred and Four Thousand Dollars.

"All of the offers are substantially lower than the appraisals as set forth by our county auditor. This court does have some faith in the appraisers that were hired by the county auditor. Because of that, the court is going to require a fourth opinion. I am going to be somewhat like the patient who wants a second opinion from his doctor. I am going two steps further. I will require a fourth opinion."

After receiving an appraisal of $2,100,000 from the appraiser so appointed, the court disapproved and rejected all the offers and authorized the trustee to withdraw the property from the active market.

A review of the consideration and determination by the trial court leads us to conclude that the trial court, instead of making findings pursuant to confirmation of the sale, in essence, assumed the function of a seller conducting a public auction by accepting bids from prospective purchasers who sought to overbid the price agreed upon by a willing seller and buyer.

Judge Miller, of the Second District Court of Appeals, the predecessor to this court, stated in *Ozias* v. *Renner* (1945), 78 Ohio App. 168, at 168-170 [33 O.O. 505]:

"Mere inadequacy of price unaccompanied by any other reason or cause is not sufficient ground for setting aside a sale which has been regularly made in accordance with law. The rule on this subject, as generally stated, is that mere inadequacy of price will not justify refusal to confirm the sale unless it is such as to raise conviction that the property was unnecessarily sacrificed. *Secor, Trustee,* v.

*Maumee Rolling Mill Co.,* 1 N.P., 100, 1 O.D., 80; 24 Ohio Jurisprudence, 65, Section 87.

"* * *

"* * * In passing upon a question of this nature, the court has other factors to consider than the interest of the beneficiaries. Public confidence in judicial sales must be sustained or bidders will not be interested in them. Sound policy dictates that judicial sales shoud be sustained as far as they can be consistently with the principles of law. Every inducement should be held forth to encourage purchasers to give the full value for what they buy. Nothing can have a stronger tendency to this effect than to sustain sales notwithstanding trifling irregularities."

The role of the trial court in a confirmation proceeding is limited to the factors set out in R.C. 5303.25. The first issue to be determined is whether the sale was fairly conducted and made. The second issue to be determined is whether a reasonable price has been offered.

A confirmation proceeding is not a public auction. It is not the trial court's function to negotiate a contract with a negotiator's power to solicit additional bids. Instead, it is the trial court's function to determine whether the price agreed upon represents a reasonable value. In some circumstances it may be appropriate for the trial court to appoint an appraiser; but this is not always necessary, nor is an appraiser's opinion conclusive as to the reasonable value of the estate sold. Based on the foregoing reasons, we find that the first and third assignments of error are well-taken and are sustained.

In the second assignment of error, Mrs. LeVeque claims that the trial court erred in weighing the evidence in refusing to confirm the sale. Insofar as no confirmation proceeding has been conducted, we do not find this assignment of error to be well-taken and it is, therefore, overruled.

The judgment of the trial court is reversed, and the cause is remanded with instructions for the trial court to conduct a confirmation proceeding as mandated by R.C. 5303.25.

*Judgment reversed and cause remanded.*

MOYER and NORRIS, JJ., concur.